Ross W. Swing et al., Appellants, v. American Federation of Labor et al., Appellees and Cross Appellants.

Gen. No. 40,195.

O'CONNOR, J., concurring in part and dissenting in part.

Opinion filed December 21, 1938.  Rehearing denied January 9, 1939.

SAMUEL A. RINELLA and MYER N. ROSENGARD, both of Chicago, for appellants; JOSEPH BARBERA, SEYMOUR RADY and ARTHUR FRANKEL, all of Chicago, of counsel.

STANTON & STANTON, of Chicago, for appellees; BAILEY STANTON, S. J. STANTON and WM. McK. GLEESON, of Chicago, of counsel.

DANIEL D. CARMELL, of Chicago, for certain appellees.

BEN MEYERS and HART E. BAKER, for certain other appellees.

FRANK J. DELANY, JR., LEON M. DESPRES, ARTHUR J. GOLDBERG, HENRY HEINEMAN and GEORGE L. QUILICI, all of Chicago, and CHARLES O. GREGORY and MALCOLM P. SHARP, both of New York State, amici curiae.

MR. PRESIDING JUSTICE McSURELY·delivered the opinion of the court.

By this appeal plaintiffs seek the reversal of an order dissolving a preliminary injunction, assessing damages and dismissing their complaint.

Pursuant to the prayer of the complaint a temporary injunction was issued restraining the defendants from picketing in front of Swing's place of business; subsequently answers were filed by defendants and a motion made to dissolve the temporary injunction and to dismiss plaintiffs' complaint, which motions were allowed. Defendants' brief seems to assume that the court considered both the complaint and the answers filed in passing upon the motions, but the orders show definitely that the complaint was dismissed for want of equity on its face, so that in considering the question

before us we have only to consider whether the complaint sets up a cause of action.

The complaint is a joint pleading filed by the employer, Swing, and all of his employees; in it Swing asserts that he is engaged in the beauty parlor business in Chicago and his co-plaintiffs are all his employees; none of the members of the defendant unions are employees, or former or expectant employees of Swing; the Cosmetologists Union, defendant, is a union Local recently organized for the purpose of taking into the union employees of Chicago beauty shop operators. Plaintiff Swing asserts he has spent a large sum of money in equipment and furnishings in his place of business and in advertising, and has built up a large clientele.

April 30, 1937, four persons purporting to be officials and business agents of Local No. 548-D of the Hairdressers and Cosmetologists Union, called upon Swing and demanded that he order his employees to join their union; the complaint alleges he told them he had no objection to his employees joining the union if they wished to do so, and had no objection to these agents discussing the matter with his employees; that he permitted them at various times to speak to his employees and never at any time, by any means, attempted to influence his employees in the matter; that he was perfectly willing that the employees should decide for themselves.

That the employees, of their own free will and without any suggestions on his part, have refused to join this union for the reason that several of them had previously on several occasions joined other unions, which unions had lasted for but a short time and were never heard of thereafter, and they believed that this experience would be repeated if they joined this particular new union; that the employees saw no advantage in joining and believed it was merely a front for its organizers for the purpose of permitting them to

collect large sums of money, not to be used for the benefit of the members but for the personal use of the organizers. Employer Swing asserts that he has had no disputes or controversies with his employees; that they are satisfied with the wages he is paying them and with their working hours and conditions; that there has never been any lockout on his part or any strike by his employees.

That notwithstanding these conditions defendants caused his place of business to be picketed by several persons; none of the pickets were employees and all of them were strangers to him and never employed by him; that beginning April 30, 1937, there were one and very often two male and female pickets walking up and down and close to the entrance to his place of business, carrying large signs with the words in large letters, ''This beauty Shop is Unfair to Organized Labor, Hairdressers and Cosmetologists Union Local 548-D, American Federation of Labor and Chicago Federation of Labor''; that the picketing continued during the entire day and part of the evening when the place was open for business. The complaint charges that the wording and lettering on the signs are untrue and designedly false and malicious; that the pickets interfered with the customers entering and coming from the place of business; that on the evening of May 15, 1937, one of his women customers, who had had some beauty work done in his shop and was just leaving, was accosted by one of the pickets then walking in front of the shop, who grabbed her by the arm and in a threatening manner said to her, ''You better not go in there again; it's a scab shop''; that on the same day another customer, as she was leaving the premises, was accosted by two men who had been loitering about the premises for some time, and who in a threatening and menacing voice said to her, ''You ought to be shot for going into that scab shop.''

That the untruthful statements on the signs misled the public and patrons into believing there was a strike in the shop; that this is untrue and unfair to the employees, resulting in loss of patronage; that successful attempts were made by the defendants to shut off the hot water and laundry supply of plaintiffs by reason of some connection with the engineer of the building and the drivers of laundry trucks.

The complaint charges that the pickets were all strangers to the plaintiff employer and that defendants were conspiring to ruin plaintiff's business, and that the entire campaign was a malevolent one, and if permitted to continue would bring about the destruction of plaintiff's business.

The question presented for determination is whether a labor union, in which none of its members are present, past or expectant employees of an employer, has a right to picket his place of business for the purpose of compelling the employees, who do not wish to join a union, to do so.

In the past the Illinois courts were committed to the proposition that peaceful picketing and peaceful persuasion were unlawful. *Philip Henrici Co. v. Alexander,* 198 Ill. App. 568; *O'Brien v. People,* 216 Ill. 354; *Franklin Union v. People,* 220 Ill. 355; *Barnes & Co. v. Chicago Typographical Union,* 232 Ill. 424; *Wilson v. Hey,* 232 Ill. 389; *Kemp v. Division No. 241,* 255 Ill. 213; *Anderson & Lind Mfg. Co. v. Carpenters' Dist. Council,* 308 Ill. 488.

October 15, 1914, the Federal Congress passed the Clayton Act as an amendment to the Sherman Anti-Trust Law, and section 20 of the Clayton Act prohibited the granting of injunctions against peaceful picketing and persuasion. July 1, 1925 (laws of 1925, page 378) our legislature passed an act substantially the same as section 20 of the Clayton Act [Jones Ill. Stats. Ann. 106.21]. This provides in substance that no

restraining order or injunction shall be granted by any court of this State—"in any case involving or growing out of a dispute concerning terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert, from terminating any relation of employment or from ceasing to perform any work or labor, or from peaceably and without threats or intimidation recommending, advising, or persuading others so to do; or from peaceably and without threats or intimidation being upon any public street, or thoroughfare or highway for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to work or to abstain from working, or to employ or to peaceably and without threats or intimidation cease to employ any party to a labor dispute, or to recommend, advise, or persuade others so to do."

In *Ossey v. Retail Clerks' Union*, 326 Ill. 405, and *Fenske Bros. v. Upholsterers' International Union*, 358 Ill. 239, the Supreme Court of this State has said that our Anti-Injunction Act is substantially the same as the Clayton Act, and our courts in interpreting our own Anti-Injunction Act have followed the decisions of the United States Supreme Court in its interpretation of the Clayton Act. That court has interpreted section 20 of the Clayton Act to refer to disputes between employers and employees. *Duplex Printing Press Co. v. Deering*, 254 U. S. 443, 469; *American Steel Foundries v. Tri-City Central Trades Council*, 257 U. S. 184, 202; *Hitchman Coal & Coke Co. v. Mitchell*, 245 U. S. 229.

The State of Wisconsin passed an act similar in all respects to section 20 of the Clayton Act and to our own Anti-Injunction Act, and the Wisconsin Supreme Court, in *American Furniture Co. v. I. B. of T. C. and H. of A.*, 222 Wis. 338, 268 N. W. 250, 256, 258,

definitely held that the act referred only to employer and employee relationships.

March 23, 1932, the Federal Congress passed what is called the Norris-LaGuardia Act, which undertook to define a labor dispute as an instance where employees of a particular business may not be members of a labor union, but a labor union of the same craft or trade was given the right, peacefully and by persuasion, to picket for the purpose of compelling employees and employers working in the same craft or trade to become members and abide by the union's by-laws. *New Negro Alliance v. Sanitary Grocery Co.,* 303 U. S. 552.

Shortly thereafter the State of Wisconsin amended its labor code so as to comply with the purposes and rights of the Norris-LaGuardia Act. The constitutionality of this amendment was upheld in *Senn v. Tile Layers Protective Union,* 301 U. S. 468, and *Lauf v. E. G. Shinner & Co.,* 303 U. S. 323.

In *Goldfinger v. Feintuch,* 276 N. Y. 281, the right to picket by strangers was sustained by virtue of a recently enacted statute defining a ''labor dispute.'' Apparently assuming that without such defining statute such picketing would be unlawful. No such amendatory act has been passed by the legislature of this State.

In the instant case the trial court apparently was moved to its conclusion by the opinion of the Second Division of this court in *Schuster v. International Ass'n of Machinists,* 293 Ill. App. 177. That opinion is a comprehensive statement of the history and decisions relating to the rights of labor unions to picket. It was there properly held that it was the province of each State to formulate its own public policy as to what may constitute a labor dispute and as to what may lawfully be done by the parties participating therein in their endeavor to achieve their respective

aims.   We are fully in accord with this statement, and possibly we might be in accord with the conclusion following this statement, that "no sound reason is advanced why the public policy of this State . . . should not be in accord with the public policy of the Federal government. . . ."

Is it a judicial or an exclusively legislative function to declare the public policy of this State? This is the question presented. In the *Fenske* case, above cited (at page 250), the well-known principle is stated that the legislative power shall be separate from the judicial. "To declare what the law is or has been is a judicial power; to declare what the law shall be is a legislative power." After noting that the legislature may, in the exercise of the police power of the State, enact those matters which have a tendency to promote the public comfort, health, safety, morals and welfare, and that this power is elastic and capable of expansion in order to keep pace with human progress, the Fenske opinion holds it was not the province of the court to discuss the merits of labor disputes; "nor are we permitted to speculate upon whether or not an act of the legislature is a wise or the best remedy for dealing with such problems. That is a matter committed by the constitution to the legislative branch of government," and article 3 of the Constitution, after stating the three distinct departments of the government, says: "no person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others."

The opinion in the *Schuster* case may present persuasive reasons why the legislature should adopt an act similar to that enacted in Wisconsin and in the Federal Congress (the Norris-LaGuardia Act) but to hold that because this should be the law it therefore is the law in this State, is encroaching upon the province of the legislature. Recalling that for years the courts of this State restrained peaceful picketing, that by the

passage of the Anti-Injunction Act such restraints were removed, and that this act was interpreted to refer only to the relationship of employers and employees, the conclusion seems to follow that, until the legislature enlarges the scope of the Anti-Injunction statute, peaceful picketing by strangers (persons not employed or previous or expectant employees) is prohibited by law.

Although in the interest of harmony we might concur in the conclusion reached in the *Schuster* case, there are present in the instant case facts not in that case which compel a contrary conclusion.

The complaint alleges certain specific acts of violence, and in no case has the right to physical violence by a labor union been upheld. The complaint alleges that the legend on the banners carried by the pickets was untrue and maliciously made. This allegation must be taken as true. On two occasions customers leaving plaintiff's place of business were accosted in a menacing manner with threats. A secondary boycott is charged in the complaint by the allegations that the hot water supply was cut off because of some connection or relationship between the defendants and the janitor or engineer. As we have said, all courts have condemned such practices, and it has been held that such conduct forms a part of a general campaign, and if any part of the campaign is unlawful then the whole campaign is unlawful and can be enjoined. *American Steel Foundries v. Tri-City Central Trades Council,* 257 U. S. 184, and *Ossey v. Retail Clerks' Union,* 326 Ill. 405. In the latter case (page 417) the opinion quoted with approval from the *American Steel Foundries* case: ''When one or more assaults or disturbances ensued they characterized the whole campaign, which became effective because of its intimidating character. . . .''

Defendants have filed a cross appeal asking that this court increase the amount allowed by the trial court as

attorneys' fees, but our conclusion carries with it the disallowance of any amount in the nature of damages.

We are of the opinion that the preliminary injunction entered by the circuit court was proper and that the court erred in dissolving this and dismissing the complaint.

The orders of the trial court are reversed.

*Reversed.*

MATCHETT, J., concurs.

O'CONNOR, J., concurring in part and dissenting in part:

In my opinion that part of the injunctional order was proper which enjoined defendants from:

"(e) Menacing, intimidating, threatening or harrassing persons employed by or persons going to and from plaintiff's place of business; from calling plaintiff and members of plaintiff's family and plaintiff's employees vile names and shouting offensive epithets;

"(f) Threatening, coercing, intimidating or assaulting the employees of the plaintiff or harrassing the employees of the plaintiff, while on their way to and from their homes to the place of business;

"(g) Threatening, coercing, intimidating or assaulting prospective employees, or persons seeking employment from the plaintiff, and from preventing by threats, coercion or intimidation, such prospective employees and persons seeking employment, from entering plaintiff's place of business"; *Fenske Bros. v. Upholsterers' International Union*, 358 Ill. 239. The balance of the injunctional order was unwarranted. *Exchange Bakery & Restaurant v. Rifkin*, 245 N. Y. 260; *American Steel Foundries v. Tri-City Central Trades Council*, 257 U. S. 184.

Our Anti-Injunction Act of 1925, in my opinion, is not limited to disputes between employer and employees as was provided in section 20 of the Clayton Act.