## AMERICAN FEDERATION OF LABOR ET AL. *v.* SWING ET AL.

No. 56. Argued December 13, 1940.—Decided February 10, 1941.

*Mr. Walter F. Dodd,* with whom *Mr. Daniel D. Carmell* was on the brief, for petitioners.

*Mr. Myer N. Rosengard,* with whom *Mr. Samuel A. Rinella* was on the brief, for respondents.

Mr. Justice Frankfurter delivered the opinion of the Court.

In *Milk Wagon Drivers Union* v. *Meadowmoor Dairies, ante,* p. 287, we held that acts of picketing when blended with violence may have a significance which neutralizes the constitutional immunity which such acts would have in isolation. When we took this case, 310 U. S. 620, it seemed to present a similar problem. More thorough study of the record and full argument have reduced the issue to this: is the constitutional guarantee of freedom of discussion infringed by the common law policy of a state forbidding resort to peaceful persuasion through picketing merely because there is no immediate employer-employee dispute?

A union of those engaged in what the record describes as beauty work unsuccessfully tried to unionize Swing's beauty parlor. Picketing of the shop followed. To enjoin this interference with his business and with the freedom of his workers not to join a union, Swing and his employees began the present suit. In addition, they charged the use of false placards in picketing and forcible behavior towards Swing's customers. A preliminary injunction was granted. Answers were then filed denying violence as well as falsity of the placards. The union also moved to strike the complaint and the trial court, finding the complaint wanting in equity, granted the motion and dissolved the preliminary injunction. The appellate court, one of Illinois' intermediate courts of review, held that the trial court was in error. 298 Ill. App. 63; 18 N. E. 2d 258. This action of the appellate court was affirmed by the state supreme court. 372 Ill. 91; 22 N. E. 2d 857. It found that the complaint properly invoked equity for three reasons: (1) there was no dis-

pute between the employer and his immediate employees; (2) the placards were libelous; (3) there were acts of violence. Inasmuch as the supreme court affirmed the issuance merely of a preliminary injunction, we denied certiorari for want of a final judgment. 309 U. S. 659. Thereupon, although as we have seen issue had been formally joined on the claims of libel and violence, the appellate court, by a procedure unrevealed by the record and without opinion, entered a permanent injunction ranging from peaceful persuasion to acts of violence. The decree recited "that this Court and the Supreme Court of this State have held in this case, that, under the law of this State, peaceful picketing or peaceful persuasion are unlawful when conducted by strangers to the employer (i. e., where there is not a proximate relation of employees and employer), and that appellants are entitled in this case to relief by injunction against the threat of such peaceful picketing or persuasion by appellees." The union sought review of this decree in the supreme court by writ of error. Swing and his employees moved to dismiss the writ because in seeking to obtain it the union had conceded that "all issues of the case have been settled on prior appeal and that the decree entered by the appellate court is in conformity with the mandate issued" to the appellate court. The writ was dismissed.

Such is the case as we extract it from a none too clear record. It thus appears that in passing upon the temporary injunction the supreme court of Illinois sustained it in part because of allegations of violence and libel. But our concern is with the final decree of the appellate court. On its face the permanent injunction in that decree rested on the explicit avowal that "peaceful persuasion" was forbidden in this case because those who were enjoined were not in Swing's employ. Moreover,

as we have seen, the supreme court of Illinois dismissed proceedings before it to review that decree on representations that the decree was in accordance with its mandate on the temporary injunction.

Since the case clearly presents a substantial claim of the right to free discussion and since, as we have frequently indicated, that right is to be guarded with a jealous eye, *Herndon* v. *Lowry,* 301 U. S. 242, 258; *Schneider* v. *State,* 308 U. S. 147, 161; *United States* v. *Carolene Products Co.,* 304 U. S. 144, 152n., it would be improper to dispose of the case otherwise than on the face of the decree, which is the judgment now under review. We are therefore not called upon to consider the applicability of *Milk Wagon Drivers Union* v. *Meadowmoor Dairies, supra,* the circumstances of which obviously present quite a different situation from the controlling allegations of violence and libel made in the present bill.

All that we have before us, then, is an instance of "peaceful persuasion" disentangled from violence and free from "picketing *en masse* or otherwise conducted" so as to occasion "imminent and aggravated danger." *Thornhill* v. *Alabama,* 310 U. S. 88, 105. We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be no "peaceful picketing or peaceful persuasion" in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.

Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The

scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. *American Steel Foundries* v. *Tri-City Council*, 257 U. S. 184, 209. The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in *Thornhill's* case. "Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution." *Senn* v. *Tile Layers Union*, 301 U. S. 468, 478.

*Reversed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS concur in the result.

MR. JUSTICE ROBERTS, dissenting.

I am unable to agree to the court's disposition of this case. I think the writ should be dismissed or the judgment affirmed.

The record presents difficult questions concerning Illinois procedure, as to which the parties are in disagreement, and we ought not to attempt to resolve them.

The respondents filed a complaint in the Circuit Court, on which a temporary injunction issued. The petitioners answered. They also made a motion to dismiss the complaint and that motion was granted, with the result that the temporary injunction was dissolved. On appeal, the appellate court reversed the order dismissing the complaint. From that action an appeal was taken to the Supreme Court of the State, which affirmed the decree of the appellate court. On analysis of the complaint, the Supreme Court found that it charged that no disputes existed between the employer and his employees; that the petitioners had been indulging, and were continuing to indulge, in a series of libels against the respondents; were indulging and were continuing to indulge, in threats and acts of violence. The grounds on which the court sustained the complaint as stating a cause of action in equity are summed up in the conclusion of its opinion thus: "A State or nation ceases to be sovereign if it tolerates within it any force other than its own, and that force must be such as is established by law, directed by the courts, observing the principles of due process and equal protection of the law. To whatever extent these rules are violated we have lawlessness, and under such circumstances a court of equity will not pick and choose among the unlawful acts and threats but will enjoin the whole scheme."

Thereafter the record discloses merely that the cause came on for further hearing in the appellate court. We do not know whether that hearing was upon the bill and answers or upon the complaint and the motion to dismiss, and the parties are in grave dispute on the

subject. We do know from the record that the appellate court, after reciting the previous history of the case, including the affirmance of its judgment by the Supreme Court, and a statement that, under the law of Illinois, peaceful picketing is unlawful when conducted by strangers to the employer, coupled with the further statement that the respondents were entitled "in this case" to relief by injunction against the threat of such peaceful picketing, and that the respondents had maintained their complaint and the equities of the case were with them, the appellate court proceeded to decree "in accordance with the mandate of the Supreme Court of Illinois," that the petitioners should be enjoined from picketing or patrolling respondents' shop, exhibiting signs and placards to persuade persons to refrain from entering the place of business and from acts of violence menacing or coercing persons seeking employment from entering respondents' place of business.

From this final decree the petitioners sued out a writ of error in the Supreme Court of Illinois and the respondents moved to dismiss it for the reason that the order and opinion on the previous appeal "finally settles all the rights of the parties." In the brief filed by the petitioners they stated: "The writ of error is here presented with knowledge that this court has fully settled all issues of the case in a prior review thereof and that the decree entered by the Appellate Court is in compliance with the mandate of this court . . . If this court adheres to the position in *People* v. *Militzer,* 301 Ill. 284, page 287; 133 N. E. 761, that issues once decided on review will not be again considered on a second review, a final order in this case may properly dismiss the writ of error on the ground that all issues of the case have been settled on prior appeal and that the decree entered by the Appel-

late Court is in conformity with the mandate issued to the Appellate Court by this Court."

The Supreme Court of Illinois, without opinion, sustained the motion and dismissed the writ of error. I am unable to say that this action was an affirmance of any recital in the decree of the appellate court respecting the legality of peaceful picketing disconnected with a continued course of publishing libels, making threats, and using force. If the final decree was right on the ground stated by the Supreme Court in sustaining the temporary injunction; and if, under the Illinois practice, the affirmance of such a correct decree based on a previous opinion of the Supreme Court does not amount to the adoption of a preamble or recital of the decree, then we ought not to reverse the final decree of the Supreme Court, which, on the facts stated in the complaint, is correct when tested by the principles enunciated in *Ethyl Gasoline Corp.* v. *United States,* 309 U. S. 436, 461, and in *Milk Wagon Drivers Union* v. *Meadowmoor Dairies, ante,* p. 287, because of a recital in the decree of the appellate court.

The CHIEF JUSTICE joins in this opinion.