## THE FAIR, Inc., et al. v. RETAIL CLERKS INTERNATIONAL PROTECTIVE ASS'N, LOCAL NO. 131, et al.

### No. 3991.

Court of Civil Appeals of Texas. Beaumont.

Dec. 4, 1941.

Sharfstein, Bell & Weinert, of Beaumont, for appellants.

J. B. Morris, of Beaumont, for appellees.

WALKER, Chief Justice.

Appellants are The Fair, Inc., a Texas corporation, owner of "Green's", a department store in Orange, and many of the employees. Appellees are the Retail Clerks International Protective Association, Local No. 131, its officers, business agents, members, Mr. Sutton and W. R. Varnall, International Representative. The suit was by appellants as plaintiffs against appellees as defendants, praying for a permanent injunction restraining appellees from conducting a picket line in front of the premises of The Fair, Inc., at Orange, and to restrain appellees from picketing the store known as "Green's", and to restrain the assembling of pickets and their sympathizers in front of the store, and to restrain appellees from committing other acts which appellants alleged were of a coercive and

intimidating nature, and damaging to their business. Appellants alleged, individually, that they were operating their business on a basis satisfactory to them, and that the conduct of appellees damaged their business; individually, they also prayed for injunctive relief. Pending the trial of the case on its merits, appellants prayed for a temporary injunction, restraining appellees from committing the acts charged against them, as constituting their cause of action for permanent relief on final judgment. On a full hearing on the law and the facts, the prayer for the temporary injunction was refused, from which order this appeal was regularly prosecuted.

On authority of American Federation of Labor v. Roth W. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855, appellants concede that appellees had the right to picket peacefully the store in Orange, owned and operated by The Fair, Inc., under the name of Green's. We take the following definition of "peaceful picketing" from Senn v. Tile Layers Protective Union. Local No. 5, 301 U.S. 468, 57 S.Ct. 857, 862, 81 L.Ed. 1229: "Peaceful picketing * * * implies not only absence of violence, but absence of any unlawful act."

The first point made by appellants is that appellees were not conducting the picket line in a peaceful manner. Much testimony was heard by the court on that issue. They contend that the court, on the undisputed evidence, erred in refusing them the relief prayed for.

The law vests the trial judge with a sound discretion in granting or refusing a temporary injunction, which will not be reviewed except upon a clear showing of abuse. Renfro v. Sperry, Tex.Civ.App., 134 S.W.2d 438; Harris County et al. v. Sam Bassett, Tex.Civ.App., 139 S.W.2d 180; Frels v. Consolidated Theatres, Tex. Civ.App., 134 S.W.2d 369. On the hearing, the judge is judge of the credibility of the witnesses and the weight to be given their testimony as on trial on the merits, and where, as in the case at bar, no conclusions of law and fact were filed, every reasonable inference on the evidence must be indulged in support of the judgment. On a review of the testimony, we make the following statement as fact conclusions, which the court was authorized to make on the testimony before him and which, in support of his judgment, we conclude he in fact made.

The Union precipitated this controversy with The Fair, Inc., at the request of certain of the employees of The Fair, Inc., who had appealed to it for relief against inadequate wages and unsatisfactory working conditions, and who subsequently became members of the Union, prior to the hearing on appellants' prayer for temporary injunction. On receipt of these written requests, the Union presented to The Fair, Inc., a closed shop contract for its execution. The Fair, Inc., not only refused to execute the contract as tendered but refused to negotiate with the Union on any sort of a contract, notwithstanding the Union was ready and willing to negotiate with The Fair, Inc., on all elements of the contract as presented to it for execution. The refusal to negotiate was peremptory. The Fair, Inc., discharged certain of its employees on account of their union activities, whereupon the Union formed and maintained the picket line in front of Green's, against which appellants sought the injunctive relief prayed for in this suit.

In their first proposition, appellants charge against appellees the following acts of misconduct and violence, which they assert made the picketing unlawful: (1) "It was the plan of appellees to take pictures of customers who were Union members in other Unions for the purpose of intimidating such customers in trading with the store of appellant, The Fair, Inc." There was testimony to the effect that both sides were planning, or in fact did take pictures. As we understand the testimony, the court was not compelled to find that any of the appellees were taking pictures of members of other Unions for the purpose of intimidating them, as charged by appellants. (2) "The defendant Sutton made the further statement that they were working through the central labor body of Orange"; there were "numerous Unions in Orange," and Sutton made the statement "that the members of the Union would not trade with appellant and that pressure would be put on all members of the different Unions who entered the store, for the purpose of trading with appellant." The picket line had been formed and maintained for more than two weeks at the time of the hearing; these statements were made by Sutton before the picket line was formed, and, no overt act being shown, they do not entitle appellants to injunctive relief; nor does the statement that "the defendant Varnall or the defendant Sutton further stated that pressure would be used on the other stores of appellant." (3) One of the pickets, Arthur Popenoe, went into

"the negro residential section of Orange and advised a negro woman that any husband belonging to the Union would not permit his wife to buy anything in Green's store." If the testimony of this old negro woman is true—the trial judge did not have to accept it as true—the conduct of Popenoe in no way injured appellants. On her testimony, after Popenoe's interview with her, she proceeded to trade wherever she pleased; his statement intimidated her to no extent whatever. This was the only testimony of any overt act on the part of appellees and their sympathizers tending to influence appellant's customers by a personal appeal. This testimony was only to the effect that Union husbands would not permit their wives to trade "in Green's store," and there was no threat by appellees to influence the husbands. (4) The evidence further showed "that employees of the Consolidated Steel Company carried the picket banner, and banner was also carried by waitresses of the various cafes and drugstores." Appellants do not assert in their proposition that these employees of other companies were in the picket line by order of any Union; as friends and sympathizers of appellees, the fact that they carried banners did not make the picketing unlawful. (5) "Customers had been sent back into the store to secure refunds after they had made purchases, such acts being directed by the pickets in front of the store and the customers making complaint about the treatment in the way of words and other matters as they walked in by the picket line." During the time the picket line was maintained, on the testimony, two customers returned and asked for a refund. This testimony was hearsay and mere statements by certain of the clerks of the reason given by the customer for the refund. The customers did not testify, nor did anyone testify to any statement made by a picket to a customer, requesting that he ask for a refund. This fact issue, if material, was decided against appellants by the court.

■ The pickets carried a banner bearing the inscription, "This place *unfair* to retail clerks No. 131, affiliated with A. F. of L." The mere fact that the pickets carried this banner did not make the picketing unlawful.

There was no evidence that appellees conspired with any of the other Unions in the city of Orange to injure appellant's business, or as the result of such conspiracy that any of the other Unions joined in maintaining the picket line; if there was any testimony on that issue, the court, on the testimony as a whole, was justified in resolving it against appellants.

■ On proper construction of the testimony, the court was justified in finding that appellees did not instigate a boycott against appellant's store. The most that the court was compelled to find was that appellees, as officers, agents and members of the Union, instigated the picket line. This act did not constitute a conspiracy or a boycott. Maintaining the Union is a lawful business; ordering the picket line was a lawful act; the fact that it was ordered by the concerted action of the members of the Union did not constitute a conspiracy nor a boycott. Frank Schmidt Planing Mill Co. v. Mueller, Mo.App., 154 S.W.2d 610, 611.

The facts of this case are not on all fours with Carpenters' & Joiners' Union of America, Local No. 213 v. Ritter's Cafe, 149 S.W.2d 694; Borden Co. et al. v. Local No. 133 of International Brotherhood of Teamsters, Chauffeurs, etc., 152 S. W.2d 828, and do not invoke the legal principles discussed by the Galveston Court of Civil Appeals in these cases, for the reason that the court, on the evidence as a whole, was authorized to find, as by implication, it did find that the picket line was maintained in a peaceful manner, without threats or intimidation on the part of any of the appellees, or any of the pickets.

On our conclusion that the picket line was maintained in a peaceful manner, the legal principle involved is simple; the picket line has support in Articles 5152–5154, R. C.S.1925.

■ Appellants' second proposition is that "the undisputed evidence showed a violation of Article 1621b of Vernon's Ann. Penal Code of Texas in that cars have been kept in the immediate vicinity of the store from time to time, and seven or eight people have congregated at the far end of the store on seats on the sidewalk when it rains, and on the parkway when it is dry, same constituting an unlawful assemblage within the meaning and purview of said Article of Penal Code." Appellants' testimony on this issue did not compel the court to find that Article 1621b had been violated.

■ Appellants' last proposition is that the employees of The Fair, Inc., as plaintiffs, were entitled to the injunctive relief, citing Henke & Pillot, Inc., et al. v. Amalgamated Meat Cutters, etc., Tex.Civ.App.,

109 S.W.2d 1083. This contention is overruled. While there had been talk of organizing a company union, no such union had been organized; no contract had been made by the employees with such a union; none of the controlling facts in the case cited by appellants was shown in this case.

The judgment·of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.