# Twin Grill Company, Inc., et al. v. Local Joint Executive Board et al.

*Edward S. Kelly, J. Desmond Kennedy* and *Russell J. O'Malley,* for plaintiffs.

*James W. McNulty* and *Louis Wilderman,* for defendants.

HOBAN, J., August 28, 1947.—This is a bill in equity seeking to enjoin defendants from picketing and boycotting plaintiffs' places of business in the City of Scranton. The bill avers that plaintiff companies have a valid and existing collective bargaining agreement with the Greater Scranton Employees Association, an independent vertical union, including in its membership all of plaintiffs' employes, and that there is no dispute between plaintiffs and the association; that defendant unions do not have any member employes of plaintiff companies, but nevertheless defendant unions have caused plaintiffs' places of business to be picketed, as well as boycotted by various other unions, purveyors of merchandise and transportation agencies by intimidation and coercion; that under the circumstances these activities are illegal and made in an attempt to coerce the plaintiffs to violate the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as supplemented and amended, by attempting to procure the disregard, breach and violation of a valid subsisting agreement between plaintiffs and the Greater Scranton Employees Association, and that all this has resulted in irrevocable damage to plaintiffs and will continue to cause such damage unless enjoined.

A rule to show cause why a preliminary injunction should not be granted was issued and hearing held on the rule before the undersigned as chancellor on June 18, 1947. Arguments on the evidence were held and some supplemental testimony was placed in the record on July 10, 1947. To understand this controversy some recital of the prior litigation must be made. In case no. 163, year 1946, before the Pennsylvania Labor Relations Board, the Greater Scranton Employees Association petitioned the Pennsylvania Labor Relations Board for an investigation and certification of the employes of Martha Company, averring that a dispute had

arisen as to the proper bargaining agency between Martha Company as the employer and its employes. The Martha Company then included the employes of the Twin Grill Restaurant, subsequently organized as a separate corporation, in its employ. The board, by a nisi decision on January 16, 1947, found as a fact that a valid contract existed between Greater Scranton Employees Association and Martha Company, dating from May 15, 1942, which is still in effect, and that the Martha Company still recognizes the association as the collective bargaining representative of all its employes, and that no question existed concerning representation which required determination of the board under section 7, subsection (c), of the Pennsylvania Labor Relations Act. The petition was dismissed, exceptions to the order were dismissed and the decision and order were made final on February 26, 1947.

In case no. 174, year 1946, before the Pennsylvania Labor Relations Board, the joint executive board of Scranton Locals 558 and 134 filed charges of unfair labor practices against the Martha Company. By the final decision, dated February 26, 1947, Pennsylvania Labor Relations Board found as facts that the employer and the officers thereof had not in any way dominated the Greater Scranton Employees Association, in addition to the same findings of fact in case no. 163, with reference to the validity of the collective bargaining agreement, but did issue a cease and desist order against certain practices by the employers which were designed to facilitate the holding of meetings, etc., by the association on the employers' premises. The board refused reargument and reconsideration of this order in a decision handed down by the board on March 11, 1947.

The local joint executive board brought a petition for the review of the decisions and orders of the Pennsylvania Labor Relations Board in these two cases to the court of common pleas of this county. At the same

time plaintiffs brought a petition asking for enforcement of the rulings of the board and an injunction against the picketing practices which the board had criticized in its opinion in case no. 174. These proceedings were to no. 697, April term, 1947. Both the petition brought by the companies and the appeal brought by the local joint board were dismissed on May 28, 1947. See opinion and order by President Judge Leach. In the instant case the record of the proceedings in no. 697, April term, 1947, Court of Common Pleas of Lackawanna County, and in cases 163 and 174, year 1946, before the Pennsylvania Labor Relations Board, were introduced in evidence.

## Findings of fact

1. Twin Grill Company is a business corporation which operates a restaurant at 229 Washington Avenue, in the City of Scranton.

2. Martha Company is a business corporation which operates business buildings, including the Lincoln Building, on the first floor of which Twin Grill operates its restaurant, the Liberty Building adjoining the Lincoln Building on Washington Avenue, in the City of Scranton, and another building in the City of Scranton known as Hotel Scranton, operated as a hotel.

3. The ownership of Twin Grill Company, Inc., and Martha Company are in the same hands, the Colovos family, and while different members of the family occupy differently titled offices in each company and have different duties therein, they may be considered as one family enterprise.

4. The Greater Scranton Employees Association is an independent union of the vertical type, which includes in its membership all of the employes, regardless of job classifications, of Twin Grill Company, Inc., and Martha Company. This union is not affiliated with any of the major National or international labor or-

ganizations and specifically it is not affiliated with the American Federation of Labor.

5. Defendants, Local Joint Executive Board of Scranton, Locals 558 and 134; Local 558 Hotel & Restaurant Employees International Alliance, and Local 134 Bartenders National League of America, are labor organizations affiliated with the American Federation of Labor. The two locals named are members of one international union. The local joint executive board is an organization composed of delegates from both locals and is formed in accordance with the international constitution of the union, when two or more locals operate in the same territory.

6. Greater Scranton Employees Association is the recognized collective bargaining agent for the employes of plaintiff companies and as such entered into a collective bargaining agreement with the employer in 1942, which agreement, modified only by wage increases, is still in effect.

7. After its initial organization in 1942 and 1943 and the conclusion of the collective bargaining agreement with the employes, Greater Scranton Employees Association held no meetings and no elections until 1946.

8. In 1946 defendant unions began to picket plaintiffs' places of business, specifically Twin Grill Restaurant, Lincoln Building and Liberty Building, by placing a single picket in front of the premises on Washington Avenue and a single picket in the rear of the premises in Dupont Court.

9. The pickets carried signs reading as follows:

"This establishment has no contract with Local Joint Executive Hotel and Restaurant Employees and Bartenders Union A. F. of L. We earnestly request our friends and sympathizers not to patronize."

10. Defendant, Richard Roe, subsequently identified as Wasil Stelmokis, was the picket in front of the

premises. He is a member of Local 558, but not an employe of plaintiff companies. This picket wore a grotesque costume and engaged in vulgar and disgusting actions, tending to annoy and disgust the patrons of Twin Grill and tenants in Lincoln Building, and to disparage the quality of food and service in Twin Grill Restaurant.

11. Stelmokis was removed as a picket after June 18, 1947, and before July 10, 1947, and another picket substituted. The sign carried by this picket was changed to read as follows:

"This establishment has no contract with Local Joint Executive Hotel and Restaurant Employees and Bartenders Union A. F. of L."

12. The picket at the rear of the premises carried similar signs to those carried in the front, and in addition thereto informed purveyors, truck drivers and others making deliveries of merchandise, laundry, etc., to the premises that "there was a strike on".

13. As a result of the picketing as aforesaid, purveyors of merchandise and provisions refused to deliver orders to Twin Grill and Lincoln Building, when their own personnel belonged to union labor organizations. Union truck drivers refused to make deliveries to the premises, the D. L. & W. Railroad Company and Railway Express Company refused to make deliveries of freight or express matter, the Model Laundry refused to provide laundry service to Twin Grill, and some purveyors refused to do any business with Twin Grill.

14. Plaintiffs in order to carry on the restaurant business have been compelled to use a truck and private automobiles to go to supply houses, milk and ice cream dealers and others and pick up required supplies. Plaintiffs have been compelled to utilize the full-time services of a company officer and two other employes for this purpose, and have been compelled

to abandon the usual marketing procedure of shopping for prices in a competitive market by telephone and the placing orders to the best advantage, and instead are obliged to take available merchandise at such supply houses as will sell to them without competitive pricing. Plaintiffs have also been compelled to provide their own laundry service. By reason of these facts plaintiffs' cost of doing business has been greatly increased.

15. Plaintiffs estimate the loss of patronage to Twin Grill since the start of the picketing as dropping from an average of 2,000 patrons a day to between 1,000 to 1,500.

16. Liberty Building, adjoining Lincoln Building, is a two-story store and office building. At the time picketing commenced Martha Company had leased the premises on a five-year lease to a commercial tenant for $54,000 for the term, to commence April 1, 1947, and conditioned upon Martha Company remodeling and altering the building to suit the tenants. Alteration work was commenced, but when picketing began as aforesaid all building trades craftsmen engaged on the work refused to continue. Since then the job has been idle and Martha Company has been unable to complete the alterations and deliver the premises to the tenant.

17. Fred Emmel, a representative of the carpenters' union, informed Chris Colovos, treasurer of Martha Company, that before any building trades craftsmen would be allowed to come in and complete the job on Liberty Building plaintiffs would have to sign with the bartenders and waiters union.

18. The acknowledged purpose of the picketing is to induce the employes of Martha Company and Twin Grill Company, Inc., to join defendant local unions according to their respective job classifications, even though such employes are presently members of an

independent union, and thereafter having obtained a majority of employe membership to petition Pennsylvania Labor Relations Board to be certified as the collective bargaining agent for all the employes.

19. Plaintiffs' relations with purveyors of merchandise and services were on the basis of separate orders and sales and they were not in specific contractual relation with such merchants or service tradesmen.

20. Plaintiff, Martha Company, had engaged and entered into contractual relations with various building contractors for the purpose of altering and repairing Liberty Building, and by reason of the action of the various building trades craftsmen these contractors were unable to complete their contracts with Martha Company.

*Discussion*

Plaintiffs' theory is that under the 1939 amendments to the Pennsylvania Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, sec. 4; Act of June 9, 1939, P. L. 302, sec. 1, 43 PS §206($d$), equity has jurisdiction in labor dispute cases to enjoin actions by a party to a labor dispute which tend to procure the breach of a valid labor agreement entered into by collective bargaining between an employer and authorized representatives of the employes, or which acts are intended or calculated to coerce an employer to compel or require his employes to prefer or become members of, or otherwise join any other labor organization, or which acts tend to coerce an employer to commit a violation of the Pennsylvania Labor Relations Act of 1937, or of the National Labor Relations Act of 1935. With this position as stated we agree, but that does not mean that a court of equity is compelled to issue injunctions unless there is an imperative necessity therefor, and courts of equity ought to apply the drastic remedy of injunction in labor disputes cautiously and with full consideration of the public policy stated in the Labor Anti-Injunction Act.

Plaintiffs argue that the actions of defendants in this case constitute coercion of the employer to violate the employer's agreement with an independent union, which agreement has been held to be valid by Pennsylvania Labor Relations Board and by this court in the proceedings to no. 697, April term, 1947, in the court of common pleas. Further, that the facts justify the inference that the actions of defendants are an effort to compel plaintiffs to force their employes to join a particular union and thus violate section 6(a) and (c) of the Act of June 1, 1937, P. L. 1168, as amended, and that defendants are attempting this coercion through two methods, by boycott and by picketing for an unlawful purpose.

The theory of defendants is that picketing peacefully conducted for organization purposes is a form of free speech guaranteed by the Federal and State Constitutions. Further, that their acts are in conformity with the established right of labor organizations to exert economic pressure directly against the employes of an unorganized industry for the purpose of inducing such employes to join their union, regardless of the incidental economic harm to the employer, and that the right is not diminished to use peaceful persuasion to induce employes to join their union even though such employes may be members of a rival or independent union, for the bargaining power of a union in a competitive industry is increased if all employes in a trade are represented by one union and correspondingly diminished by the existence of minor or rival unions in a given shop within the industry. This is based on the theory that standards of wages and working conditions cannot be maintained in a competitive industry unless all employes conclude substantially the same type of agreements, and both employers and employes of organized shops are at an economic disadvantage when competing against the unorganized

or independent union shop. Therefore, the employes of a large union have the right to agitate and publicize their cause and bring their own economic pressure to bear by inducing the public to withhold their trade from the nonunion or independent union shop. The theory follows that if the employer suffers economic harm in the process, it is damnum absque injuria.

Obviously economic pressure is coercion of a sort, but it has not heretofore been considered in itself illegal, since the economic weapon exercised by withholding his work or inducing his friends to withhold their custom from the nonconforming enterprise is the only weapon which the workman has to support his bargaining power.

Peaceful picketing is recognized as a form of free speech: Westinghouse Elec. Corp. v. United Electrical Radio & Machine Workers, 353 Pa. 446, 457; Carnegie-Illinois Steel Corp. v. United Steel Workers of America et al., 353 Pa. 420.

Peaceful picketing for organization purposes, even though the picketing is done by one not an employe of the employer concerned and where there is no dispute between the employer and his employe, is lawful as an exercise of the right of free speech: American Federation of Labor et al. v. Swing et al., 312 U. S. 321, 61 S. Ct. 568. The principles of the Swing case are controlling in Pennsylvania: Friedman v. Blumberg et al., 342 Pa. 387. The following extract from A. F. of L. et al. v. Swing et al., supra, is pertinent:

"Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise

limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. American Steel Foundries v. Tri-City Council, 257 U. S. 184, 209. The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in Thornhill's case. 'Members of a union might, without special statutory authorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.' Senn v. Tile Layers Union, 301 U. S. 468, 478'': 312 U. S. 325, 326, 61 S. Ct. 570.

Is the picketing in this case an attempt to coerce the employer into violating a valid labor agreement, or by compelling him to coerce his own employes to coerce him into a violation of the Pennsylvania Labor Relations Act? There is no proof that these defendants, or any of them, have at any time, directly or indirectly, attempted to compel the employer to take any action which would coerce his employes, affect the existing contract with his employes, require them to become members of defendant unions as a condition of their employment, or in any way compel them to give up or abrogate any of the rights which they now have. The appeal by the picketing, particularly since

the modification of the picketing signs, is directed towards the employes and for the information of the public. If the public either as patron or tradesman who deal with the shop decide to withhold their patronage or their trade and services from the employer because his employes do not belong to the unions which these people favor, it is their legitimate right to do so, provided the method of providing information through picketing or inducement to the employes and trades people is not accomplished in an unlawful manner, or again, provided that there is no valid provision of statutory law which prohibits such actions. To hold otherwise would be to deny the validity of the reasoning in A. F. of L. v. Swing, supra.

During the progress of this litigation two acts of the Pennsylvania assembly were approved. One act, approved July 7, 1947, No. 558, by its terms became effective immediately upon final enactment. This act is an amendment to the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, and adds to section 6, subsection (2), two new definitions of unfair labor practices by labor organizations as follows:

"(D) to engage in a secondary boycott or to hinder or prevent by threats, intimidation, force, coercion or sabotage the obtaining, use or disposition of materials, equipment or services or to combine or conspire to hinder or prevent by any means whatsoever the obtaining, use or disposition of materials, equipment or services.

"(E) To call, institute, maintain or to conduct a strike or boycott against any employer or industry or to picket any place of business of the employer or the industry on account of any jurisdictional controversy."

The provisions of clause (D) as quoted above are not applicable to the case at bar except insofar as we consider the boycott of the building tradesmen to be illegal, as discussed hereafter, as we do not consider

that the picketing, conducted peacefully as it is for organization purposes, constitutes in any way a threat, intimidation, force, illegal coercion or sabotage. There is no evidence of any combination or conspiracy to hinder or prevent plaintiffs from obtaining the use of materials, equipment or services through unlawful means other than the legitimate refusal of the dealers to provide such materials or services.

Paragraph (E), however, presents a more serious situation. Plaintiffs' business enterprises are already organized by an independent union, which has a valid, subsisting, collective bargaining agreement with plaintiffs. Another union now attempts to organize the business by inducing the employes to join its ranks, with the legitimate intention of establishing itself by lawful means as the appropriate bargaining agency. At first glance this may appear to be a jurisdictional dispute, but we think analysis of the situation clearly shows that it is not. Defendant unions deny any attempt to procure a contract conflicting with that already entered into with the employes' association, and there is no evidence to controvert their position. Their effort merely at the present date is to induce the employes to take out memberships in defendant unions, and when and if their membership becomes a majority they will then proceed in due form to ask the Pennsylvania Labor Relations Board to secure to them certification as the appropriate bargaining agency. We can see nothing in this procedure which attempts to interfere with any present contract, either with the employes' association or with the direct suppliers of merchandise or services. As we understand a jurisdictional controversy, it is one in which two or more rival unions claim jurisdiction to determine through collective bargaining the terms of work in a particular phase of an employer's operation, or claim to be recognized as the sole bargaining agents for all the em-

ployes. Here, defendant unions claim nothing except the right to persuade employes to join their organization. Hence, the controversy is not a jurisdictional one and so cannot be called, under the terms of paragraph (E), supra, an unfair labor practice. Holding this view, we find no necessity to decide whether the appropriate forum for relief against an unfair labor practice is not by petition to the Pennsylvania Labor Relations Board itself rather than by appeal to the courts.

With reference to the refusal of the building trades craft union to work on the Liberty Building job, we are of the opinion that such actions are clearly an illegal boycott, which has the direct result of forcing a breach of the contracts between the building contractors and Martha Company, and between Martha Company and the tenant under lease executed for a term of years. This is particularly emphasized by the statement of a representative of the carpenters' union to the treasurer of the Martha Company that the only way the building crafts could be induced to return to work was by the employer signing with the Bartenders and Waiters Union, an action which the employer could not possibly do without violating its valid agreement with the employes' association, or without violating the Pennsylvania Labor Relations Act. These actions would be enjoined but for the fact that there is no proof in the record that defendant unions in any way combined with or conspired with the building craft unions to bring about this boycott, nor are the building craft unions parties defendant to this action. If proof can be adduced that defendants have direct responsibility for this action, or if the building craft unions are brought properly on the record and have their day in court, such action could then be taken as warranted by the proofs.

The actions of the picket, Richard Roe (Wasil Stelmokis) insofar as they were vulgar, nauseating, dis-

gusting and reflecting upon the character of the business conducted by plaintiffs, are clearly illegal and those or any similar actions by any other picket may be enjoined.

Act No. 484 of the Pennsylvania Legislature, approved June 30, 1947, which purports to add another amendment to section 6 of the Pennsylvania Labor Relations Act, making it an unfair labor practice on the part of a labor union to picket or cause to be picketed a place of employment by a person or persons who is not or are not an employe or employes of the place of employment, does not become effective until September 1, 1947, and hence cannot have any effect on this litigation. Under the principles expressed in A. F. of L. v. Swing, supra, the constitutionality of this particular provision may be seriously questioned.

To summarize, we are of the opinion that the picketing as now conducted for the purpose of disseminating information that the establishment has no contract with Local Joint Executive Hotel and Restaurant Employees and Bartenders Union, A. F. of L., is a legal exercise of the constitutional right of free speech and is not unlawful coercion within the meaning of the Pennsylvania Labor Anti-Injunction Act, or within the meaning of the various provisions of the Pennsylvania Labor Relations Act, and equity has no power to prevent such picketing, provided it is accomplished by peaceful means. The stoppage of work on Liberty Building is a boycott, subject to be enjoined if appropriate proofs are provided of responsibility on the part of defendant unions or responsible persons are made parties to the record and have opportunity to be heard. An injunction may properly issue to prevent such practices in picketing for organization purposes as are inconsistent therewith or attempt to reflect upon the bona fides, good faith or competency of plaintiffs in the conduct of their business.

## Conclusions of law

1. The picketing of plaintiffs' premises is for organization purposes.

2. Peaceful picketing for organization purposes is a right of free speech guaranteed by the Constitution of the United States and may not be enjoined.

3. Practices by pickets which reflect upon the integrity, bona fides or business competency of the employers or their enterprises, under these circumstances may be enjoined.

4. The chancellor, under the present state of the record, is unable to enjoin the illegal boycott against the building operation at the Liberty Building.

## Order

Now, August 28, 1947, let a preliminary injunction issue forbidding defendants, or any of them, or any other person or persons, from

1. As a picket displaying to the public any sign or device containing other than the words: "This establishment has no contract with Local Joint Executive Hotel and Restaurant Employees and Bartenders Union, A. F. of L." unless such other sign or device is exhibited to the chancellor and found not to be contrary to the purposes for which the picketing is being conducted.

2. Displaying any. signs, devices, or engaging in any acts, actions, conversations, language, noises or gestures of a vulgar, disgusting, nauseating or degrading nature, or which in any way reflect discreditably upon plaintiffs, their officers or employes, as to the conduct of their business or the quality of their food or services rendered in the Twin Grill Restaurant or the Lincoln Building.

3. The use of any publication, devices or means whatsoever which would tend to indicate to the public, or to persons doing business with plaintiffs, that plain-

tiffs have in any way any right to control or induce the employes of plaintiffs to join or not to join any specific union, or that plaintiff companies have the power to terminate or modify any valid collective bargaining agreement now in effect between plaintiffs' employes and plaintiff companies.