## BROWN v. RETAIL SHOE & TEXTILE SALESMEN'S UNION, LOCAL NO. 410 OF RETAIL CLERKS INTERNATIONAL ASS'N, A. F. OF L.

### No. 29445.

United States District Court
N. D. California, S. D.
March 6, 1950.

James Foley, National Labor Relations Board, Washington, D. C., Louis Penfield, National Labor Relations Board, San Francisco, Cal., for petitioner.

P. H. McCarthy, Jr., F. Nason O'Hara, San Francisco, Cal., for respondent.

ERSKINE, District Judge.

This action involves a petition for an injunction, pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, 61 Stat. 136, et seq., 29 U.S.C.A. § 141 et seq., hereinafter called the Act. The petition was filed after a preliminary investigation of charges made by A. E. Cramer, Inc., a California corporation, alleging that respondent has engaged in unfair labor practices within the meaning of Section 8(b) (4) (C) of the Act. Section 10(*l*) of the Act provides that if the officer or regional attorney of the National Labor Relations Board "has reasonable cause to believe such charge is true and that a complaint should issue, he shall * * * petition any district court * * * for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper * * *." Section 8(b) (4) (C), which respondent is alleged to have violated, reads as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

   *    *    *    *    *    *

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is:

   *    *    *    *    *    *

"(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of Section 9;"

What is necessary for this Court to determine is whether or not the petitioner had reasonable cause to believe the charges are true and respondent has engaged in conduct in violation of Section 8(b) (4) (C) of the Act; (2) whether such conduct affects commerce within the meaning of the Act; and (3) whether injunctive relief would be appropriate, just, and proper under the circumstances and in view of the underlying policies of the Act.

There is little dispute over the basic facts involved herein; the controversy at the hearing was concerned more with the weight to be accorded certain evidence and the inference which might or should be drawn therefrom.

The alleged unfair labor practices are directed against the business operations of A. E. Cramer Inc., engaged in operating retail department stores selling wearing apparel, jewelry, luggage, toiletries, and so forth, in two locations in San Francisco. During the year 1949 Cramer purchased merchandise for resale having a value in excess of $240,000, approximately 60 percent of which was shipped from sources outside the State of California.

About June 1, 1949, respondent Local 410, acting through its business representative, William Anthony, requested that Cramer recognize Local 410 as the sole collective bargaining representative of all of

its employees and sign a union shop contract providing for wages, hours, and other conditions of employment. Cramer refused for the reason that Local 410 did not demonstrate or claim that it represented a majority of such employees, and because such employees did not desire to be represented by Local 410. Accordingly, on or about June 25, 1949, respondent Local 410 placed a picket in front of the store at 99 West Portal Avenue; when Cramer began alterations to the second store located at 160 West Portal Avenue preparatory to its opening the respondent began to picket that outlet. The pickets distributed handbills and carried banners which read: "Unfair, Do Not Patronize. Retail Shoe and Textile Salesmen's Union, Local 410, A.F.L. Sanctioned by S. F. Labor Council", and "A. E. Cramer Clothing, Unfair to Organized Labor of the American Federation of Labor. Do Not Patronize." Shortly thereafter Cramer filed charges with the petitioner, claiming that respondent Union was guilty of practices inhibited by the Act. These charges were considered by the petitioner and subsequently dismissed.

On or about August 30, 1949, Douglas Maas, a salesman employed by Cramer, filed with the 20th Regional Office of the Board a petition for certification as collective bargaining representative of Cramer's employees, pursuant to Section 9(a) and (c) of the Act. Respondent Union was notified of the filing of this petition. Pursuant to the result of a consent election conducted by the Board's representatives, the Board on November 21, 1949 certified Maas as the exclusive bargaining representative of "all employees at the Employer's two stores."

Prior to this certification of Douglas Maas as the collective bargaining representative, the respondent union sent two signed copies of a proposed collective bargaining agreement to A. E. Cramer. However, upon receiving notice of the certification of Douglas Maas, respondent's attorney advised the union that it could no longer legally ask for a collective bargaining contract with A. E. Cramer. It was decided, therefore, at a meeting of the union executive board on December 6, 1949 that from then on the object of the picketing would be merely to advertise to the public that A. E. Cramer did not employ A. F. of L. clerks under prescribed A. F. of L. conditions. In accord with this ostensible change of purpose, the picket signs were changed to read "This Store Does Not Operate Under A. F. L. Union Conditions", and the circulation of handbills and leaflets was discontinued. The effect of this avowed change in purpose is counteracted by the testimony of Mr. W. Silverstein, secretary of the union, who would give only an equivocal answer to the question whether the union would continue to picket if Cramer entered into a binding collective bargaining agreement with his employees on terms identical with A. F. L. union agreements.

Finally, it should be noted that there is no evidence that the employees of Cramer were encouraged or induced to go on strike or do anything by reason of the activities of respondent union.

In the light of the foregoing facts, it is the opinion of this court that the granting of any injunctive relief in this proceeding would be neither appropriate, just, nor proper for the following reasons:

1. It is doubtful that the unfair labor practices charges affect interstate commerce in any substantial manner. Despite the dubious origin of the rule that there is no difference in principle between the case in which manufacture or sale precedes and that in which it follows interstate commerce,[1] the rule has been accepted and is well settled today.[2] However, in all the cases cited by the plaintiff where jurisdiction has been assumed by the NLRB and approved by the courts either the total volume of business or the percentage of out of state purchases was far in excess of that involved in this case. In many of the cases the retail establishment involved sold at least a small portion of its product across the state line. It seems clear from the latest decisions of the NLRB that the

1. Newport News Shipbuilding & Dry Dock Co. v. N. L. R. B., 4 Cir., 101 F.2d 841.

2. N. L. R. B. v. Van de Kamp, 9 Cir., 152 F.2d 818.

Board considers that operations of the type involved in this case are essentially local in character and that to assert jurisdiction would not effectuate the policies of the Act.[3]

2. The issue of whether the petitioner had reasonable cause to believe that there had been a violation of Section 8(b) (4) (C) presents some difficulty in view of the lack of a definite standard as to what constitues "reasonable cause." Despite the respondent's claims to the contrary, the state of the evidence supports an inference that there was reasonable cause to believe that an object of the respondent's actions was to force A. E. Cramer to bargain with respondent union as the representative of his employees.[4] Such an inference is not inconsistent with respondent's claim that its *primary* object was to safeguard its own members and their employers from the allegedly unfair competition of A. E. Cramer by advertising to the public that A. E. Cramer did not hire AFL clerks. However, it is more questionable to say that the petitioner had reasonable cause to believe that the picketing activities of the respondent "induced or encouraged the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, * * * or to perform any services," a necessary finding under Section 8(b) (4). There is no evidence that the pickets tended to or intended to induce or encourage the employees of Cramer to do anything.

If the contention is that the pickets induced or encouraged the employees of other employers, e. g. railroad express employees, telephone company employees, and so forth, to engage in a strike or concerted refusal to transport goods or perform services, a different problem is presented. That such an interpretation of Section 8(b) (4) was intended by the framers of the Act is doubtful. In other words, it is doubtful that the communication between pickets of Union A, patrolling in front of Employer X's establishment, and employees of Employer Y who happen to approach X's store to make deliveries or perform services, can be considered encouragement or inducement to strike or engage in *concerted* refusal to so deliver or serve. The evidence in this case shows that any refusal to deliver or perform services was apparently an individual matter on the part of the employees concerned.

A further difficulty arises from such an attempt to interpret Section 8(b) (4) so as to include the indirect inducement and encouragement of the employees of the express company, telephone company, and so forth. If this interpretation of Section 8(b) (4) is correct as applied in conjunction with subparagraph (C), in issue in this case, the same interpretation must be applied in conjunction with subparagraph (B), which pertains exclusively to secondary boycotts.[5] Suppose, for example, Union A is picketing store X, where *no* union has been certified, for the purpose of inducing X's employees to strike or to force X to recognize or bargain with Union A. This is an orthodox primary recognition strike, is not forbidden by the Act, and cannot be enjoined even though Union A has no members employed in store X. Such an injunction would be a violation of the 1st Amendment guarantee of freedom of

3. In re Squire's Case No. 21-RC-883, 88 NLRB No. 2, January 6, 1950; and In re Morris O. Lebowitz, Case No. 35-RM-21, 88 NLRB No. 3, January 6, 1950.

4. See comment 2 Stan.L.Rev. 399 for a discussion of the requisite intent necessary under Section 8(b) (4) of the Act.

5. Section 8(b) (4) (B) reads as follows: "It shall be an unfair labor practice for a labor organization or its agents—
* * * * * * *

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal * * * to transport, or otherwise handle or work on any goods, * * or to perform any services, where an object thereof is: * * * (B) forcing or requiring any *other* employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees".
* * *

speech.[6] Assume further that employees of carrier Y approach store X to make deliveries, but are induced by the picket line not to make said deliveries. If Section 8(b) (4) is interpreted in the manner suggested by the petitioner, the hypothetical situation outlined above would become a secondary boycott prescribed by 8(b) (4) (B) and the picketing would be subject to injunction, contrary to the rule of A. F. L. v. Swing, supra. The only logical conclusion is that the indirect inducement or encouragement of the employees of the express company, telephone company, and so forth, is not the type of direct inducement and encouragement encompassed by the phraseology of Section 8(b) (4) of the Act.

3. A third factor influencing the decision of this Court is the possibility that the peaceful picketing activities of the respondent are merely an exercise of its right of freedom of speech as currently defined by Supreme Court decisions,[7] and the difficulty of formulating a type of injunctive relief that would not violate the 1st Amendment, or Section 8(c) of the Act.[8] As pointed out by the Court of Appeals for the Tenth Circuit, "The promulgation and circulation of a blacklist and the peaceful picketing of premises in the course of a labor dispute may constitute a phase of the constitutional right of free utterance, if the blacklist is confined to the name of the employer primarily involved in the controversy and the picketing is confined to the premises of such employer."[9] This conclusion is not contrary to the Ninth Circuit case cited by the petitioner, Printing Specialties and Paper Converters Union v. Le Baron,[10] which

held only that an injunction against a secondary boycott did not violate the 1st Amendment or Section 8(c) of the Act.

Upon the basis of the foregoing reasons, and in the exercise of the Court's permissible discretion,[11] the requested injunctive relief is hereby denied.

---

6. A. F. L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855.

7. Thornhill v. Alabama, 310 U.S. 88, 60 S. Ct. 736, 84 L.Ed. 1093; Carlson v. California, 310 U.S. 106, 60 S.Ct. 746, 84 L. Ed. 1104; American Fed. of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L. Ed. 855; Bakery & Pastry Drivers & Helpers Local v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178.

8. "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisals or force or promise of benefit."

9. United Brotherhood of Carpenters etc. v. Sperry, 170 F.2d 863, 868 citing cases noted in footnote 7 supra.

10. 171 F.2d 331.

11. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754; United Brotherhood of Carpenters etc. v. Sperry, supra 170 F.2d at page 869.