**FOUTTS, Plaintiff, v. JOURNEYMEN BARBERS, LOCAL No. 105, etc. et., Defendants.**

Common Pleas Court, Summit County.

No. 169512. Decided October 11, 1949.

**538**

Fred Schnee, Scott Belden, Akron, for plaintiff.
Edward Sheck, Ray McGowan, Akron, for defendants.

## OPINION

By WATTERS, J.

The facts of this case are practically all agreed upon as an agreed statement of facts in the record or by written filed stipulations, which will not be set forth in full herein.

For the purposes of this decision these are the facts as the court finds them to be:

The plaintiff is an employer or proprietor barber working with the tools of the trade, and owns and maintains his shop at 780 South Main Street, Akron, Ohio. He is a member of the Associated Master Barbers and Beauticians of America. He employs as assistants from time to time other barbers, who are members of the defendant Union. The plaintiff since November 19, 1936, operated a union shop, and employs as barbers only members of the defendant Union. The plaintiff possesses a union shop card issued to him by the defendant Union on November 19. 1936, in accordance with the terms, conditions and agreements contained on said card. There has been and there is no dispute between plaintiff and his employees and between plaintiff and the defendant union over hours of work or wages, but there is a dispute over the conditions of employment raised by the new constitution and bylaws adopted in September 1948, by the defendant Union, which became effective on January 1, 1949. (Plaintiff's Exhibit 4)

Under the new constitution adopted as aforesaid by Article III, Section 1, local unions such as the defendant Union, were given authority to establish guilds composed of employers and proprietors as distinguished from employee or journeymen barbers. Under the new Constitution the plaintiff would fall under the following classification:

■ **An employer** (Article VIII, Section 3) He is any person who either owns or operates a barber shop and employs steadily one or more full-time barbers. **If he works with the tools of his trade he must become a proprietor member of**

**the local union.**   (Emphasis by this court.)

Under the so. called shop card agreement (Plaintiff's Exhibits 2 and 3) provision is made that the employer, in consideration of being allowed to display the union shop card, agrees to comply with all the rules governing shop cards, which are printed on the back thereof, and any subsequent rules and laws of the International Union.   He also agrees that the card is and shall remain the property of the International; that it is loaned to him only during such time as the conditions imposed are fulfilled by him, and that he will not sell or transfer the card.   He also agrees on demand to allow, without interference, any duly appointed representative of the union to remove said union barber shop card from any point of display.   He also agrees to be bound by the laws and constitution of the International Union, and local, with reference to prices, hours, wages and working conditions.

The new Constitution also provided (Article VII, Section 5) as follows:

"No shop card shall be displayed in a barber shop unless all persons working in the shop with the tools of the trade are members of the union in good standing."

The defendant Union has demanded the union shop card of plaintiff because he refused to sign an application to join the guild of the local. If he joins, he claims he will have to resign and forfeit his membership in the Master Barbers Association, thus losing his insurance benefits and being over fifty-five years of age could not be a beneficiary member of the defendants' guild.   (See Article VIII.)

In the application for membership in Employers' Guild No. 2 (Plaintiff's Exhibit 5) in addition to being bound by the new constitution of the International, as it is now or hereafter amended, plaintiff would have to certify that he is not a member of any organization dual to this organization, and if accepted would not become a member of such a dual organization.   He would also have to agree that the local defendant union would be the authorized bargaining agent on wages, hours and other working conditions.

A proprietor member working with the tools of the trade shall be entitled to a voice and vote in meetings of the local unions, but shall be ineligible to vote on matters pertaining to wages, hours of labor, etc.   He shall be ineligible to any

office in the local or International and ineligible to act as delegate or alternate to conventions.

It is admitted that if plaintiff loses his union shop card, all his union journeymen would walk out on him, as they are not permitted to work where such union shop card is not on display, and of course union men generally will not patronize a non union shop. So plaintiff claims his livelihood as a barber, and his insurance rights in the Master Barbers Association are at stake. He has been a barber for fifty-three years, and claims his age prevents any other gainful employment.

This court, however, holds under the testimony in the case, and by consideration of the written stipulations of counsel filed September 29, 1949, that the plaintiff can still remain a member of the Master Barbers Association in the nature of a non-active member, and can still. retain substantially all of his insurance rights in said organization if he joins the defendant union guild. Even though the court may be incorrect on this, I do not consider this matter decisive at all of the case

### DISCUSSION OF THE LAW.

This court on August 24, 1948, decided the case of **Iacomini's Restaurant Inc. v. Hotel and Restaurant Employees and Bartenders Local No. 181, et al (54 Abs 33),** now appearing in **38 O. O., page 552** (Ohio Law Rep. March 14, 1949). The case appears also in 85 N. E. 2nd, 534.

The syllabus as approved by this court held:

"A Labor Union does not lose its right to peacefully picket a non union business where the object is to secure a closed shop."

In that case the business was non-union. There was no dispute of any kind between the employees and management. The union was picketing to secure a closed shop.

This court's opinion was based on the case of A. F. of L. v. Swing, 312 U. S. 321, (Feb. 10, 1941) which held:

"The constitutional guarantee of freedom of discussion is infringed by the common law policy of a State limiting peaceful picketing by labor unions to a case in which the controversy is between the employer and his employees."

The union there sought to unionize a non union shop. (beauty parlor)

In the case of **Crosby v. Roth, 136 Oh St, 352,** the Ohio

Supreme Court enjoined all picketing on the grounds that there was no legitimate trade dispute. This case was decided in January 1940, before the Swing case was decided.

The facts of the Crosby case were practically the same as those of the Iacomini case, there being no dispute between the restaurant management and its employees. During the picketing before the temporary injunction there was however extreme violence, the slashing of tires on patrons' cars, throwing of stench bombs, assaults upon employees and customers, dynamiting of the employer's residence, and the like.

In my opinion, by authority of the Swing case, there was a legitimate trade dispute in the Crosby case. The U. S. Supreme Court refused to review it. My opinion is that had they done so, peaceful picketing would have been refused because of the extreme violence.

The Supreme Court announced in Milk Drivers Union v. Meadowmoor Dairies, etc., 312 U. S. 287 (Feb. 10, 1941) that when the violence is of such magnitude originally that continuation of peaceful picketing will operate coercively, by exciting fear that the former violence will be resumed, then all picketing will be enjoined. This pronouncement was made on the very day the court refused to review the Crosby case.

The court will now discuss at some length the case of Riviello et al v. Journeymen Barbers etc. International Union of America Local No. 148, 199 Pac. 2nd 400, decided November 15, 1948, by the First District Court of Appeals of California (a court in the same relative position as our Ninth District Court of Appeals) and not the Supreme Court of California.

The questions involved and the facts were almost identical with ours. The plaintiffs filed a petition seeking to enjoin the local union, a member of the same international as is involved in our case, from removing the union shop card, and picketing plaintiff's business to compel plaintiffs, who were working proprietors or employers, to join the employees' union. The union membership offered plaintiffs was the same as in our case, that is, carrying practically the same restrictions and limitations as to voting, holding office, being delegates, etc.

On the preliminary hearing in which plaintiff sought a preliminary injunction, the defendants having demurred, the trial court (in the same position as our common pleas court) refused the injunction and sustained defendant's demurrer. Before trial on the merits, the plaintiff appealed to the higher district appellate court.

The facts before both courts were practically agreed upon and were before said courts by affidavit and counter affidavit and otherwise.

The Appellate Court (199 Pac. 2nd page 400) held in Syllabus 3:

"The compelling of an employer who works at the trade in competition with union members, to join the union, is a proper labor objective, and is for the 'mutual aid or protection' of employees **within statute** declaring necessary the freedom of individual workmen to organize and choose representatives to negotiate terms of employment, and freedom of workmen from interference, restraint, or coercion of employers, in designating representatives for mutual aid and protection." (Emphasis by this court.) Citing California Labor Code, Sec. 923.

Syllabus (5) held that the Taft-Hartley Labor Bill was inapplicable, as this case was wholly intrastate.

Syllabus (6)

"Barbers union could not picket barber shop to try to compel employer-barbers to join union where the only type of membership offered employers was a sterile membership not entitling employers to vote, hold office or participate in any of the union affairs." Labor Code 923.

Note by this court Section 923 of the California Labor Code referred to above is a statutory statement of Public Policy as to Labor organizations in California.

In Syllabus (7) the court held:

"Picketing and other forms of economic pressure are permissible when object sought to be attained is reasonably related to legitimate and lawful interest of organized labor, and where such concerted action is carried out peaceably and honestly, but where purpose sought to be obtained is unlawful or carried out forcibly and untruthfully, the picketing or other form of concerted action should be enjoined."

On page 405, paragraph (6) of the opinion, the court said in substance: The fact that it is lawful to picket to attempt to compel an employer who works at the trade to join the labor union with which he is competing does not settle the present controversy.

The defendants are threatening to remove that card (the union shop card) and are threatening to picket unless plaintiffs become non active members of the union. In other words plaintiffs cannot earn a living at their trade unless they join the union, and if they join, they become sterile members.

**That cannot and should not be held to be a proper and lawful labor objective.** (Emphasis by this court.) This ruling was based on James v. Marinship Corp. 25 Cal (Sup Ct) 2nd p. 721, or 155 Pac. 2nd page 329.

There the union sought to compel negro workers to join an auxilliary union where they would have no voting rights, etc. **which of course directly involved the question of race discrimination, etc.**

The court on page 404 also cited the case of Cafeteria Union v. Angelos, 320 U. S. (U. S. Sup. Ct.) 293 and said:

"The Angelos case stands squarely for the principle that a union may picket lawfully to induce the operator or owner of a business, who works for himself, to join the union."

The United States Supreme Court in said connection, in the Angelos case cites with approval the Swing case, 312 U. S. 321, cited in this opinion (in connection with the Riviello case) and cited herein by this court in this, the Foutts case.

See also the Minnesota Supreme Court case, Coons v. Barbers Union, 222 Minn., 100; 23 N. W. Second, 345, decided on the basis of the Angelos case above.

It will be noted that the Riviello case is the interpretation of one of its courts of appeals of the law of California, as evidenced by its statutory law and the decisions of its Supreme Court.

### CONCLUSIONS OF THE COURT.

It is the duty of the court in the instant case to interpret the law of this state and the law of the United States as it now is as evidenced by the Swing case supra (312 U. S. 321) and by the Cafeteria Union v. Angelos case supra (320 U. S. 293).

Under the law as this court views it, the defendant union has the right to peacefully picket the plaintiff's shop providing it does so in a manner which honestly and truthfully has for its purpose the informing of the public as to the dispute between plaintiff and the defendant union, under and by virtue of the freedom of speech doctrine laid down by the Supreme Court of the United States in the Swing and other cases where there is a lawful labor dispute.

Under other Supreme Court cases the legislature of Ohio has full power to legislate against "closed shop" demands and demands such as in the instant case, and if it does legislate against it, the Supreme Court would recognize the State's right to so do within reason.

The court also holds the defendant **could not force the plaintiff to join the union or get out of business by taking from him the union shop card.** That card was issued to him in 1936, and he has played fair and conducted a union barber shop ever since, and has met all reasonable and lawful provisions of the union nationally and locally which could have reasonably been anticipated by the contracting parties at the time. Surely plaintiff could not reasonably have even suspected that the international union would alter the status quo to such an extent that plaintiff would be coerced to join the union or lose his entire business. That proposition, in the court's opinion, transcends all principles of equity and justice, and would amount to **"constructive force and violence"** far more effective than actual force and violence, which is of course not a legal or proper way to settle labor disputes; because it is conceded that if the union shop card is removed, plaintiff's union employee barber or barbers would be automatically forced to quit his or their employment.

The situation is further aggravated by the fact that if he did join the union, he cannot enjoy the same rights that employee members enjoy.

Under the authorities I do not say that this is an unlawful demand on the part of the union, but it is certainly a phase the court can consider as part of the "constructive force" theory the court has discussed above in relation to refusing the union the right to lift the union shop card, under the facts and the law.

In the court's opinion this is the only legal fair and reasonable solution of this problem. Although the defendant union has not picketed the plaintiff, and apparently, locally at least, has not followed that policy, yet it has that right. Under the freedom of speech doctrine, it may peacefully picket, or by advertisement, etc., acquaint the public fully with the true dispute as it exists, and likewise plaintiff would also enjoy the right of freedom of speech and the press to put forth his side of the argument.

If we once destroy this mutual right of all to exercise this freedom of speech, we will destroy one of the greatest rights our people enjoy under our democratic form of government.

A journal entry may be drawn accordingly with exceptions to all parties.