**RALEIGH et, Plaintiff, v. YANKO et, Defendants.**

Common Pleas Court, Summit County.

No. 184176. Decided May 15, 1952.

Robert E. Shuff, Akron, for plaintiff.
Paul Taylor, Akron, for defendants.

## OPINION

By WATTERS, J.

This matter was tried to the court on stipulated facts read into the record and upon other oral testimony or evidence, exhibits, etc. Plaintiff's Exhibit "A" attached to the petition was admitted in evidence as a true copy of the agreement signed by the parties.

### FINDINGS OF FACT AND LAW.

The plaintiff union represents the waiters, bar tenders and similar employees, and the defendants, Nick Yanko and his wife, are partners, doing business as the Bubble Bar at 846 West Market Street, Akron, Ohio, where they conduct a restaurant and bar business, and have for many years.

On March 29, 1951, the interior of the building occupied by defendants on lease was gutted by a fire which necessitated vast repairs and reconditioning in the amount of some Fifty Thousand Dollars over the fire insurance paid of more than the same amount.

The place, after repairs, opened formally on November 10, 1951, business being suspended in the meantime during repairs.

On October 22, 1951, Mrs. Raleigh, an officer in plaintiff union, approached Mr. Yanko about unionizing the business. He gave no answer, and she returned for his answer the next day, October 23, 1951. He still did not commit himself. So on the next day, October 24, 1951, the union placed a picket at the premises. In the meantime the A. F. of L. was notified that trouble was expected at the Bubble Bar. Upon the posting of the picket, the other A. F. of L. workers, to-wit, plumbers, carpenters, etc. engaged in getting the premises ready for business, walked off their jobs, refusing to cross the picket line of the plaintiff union, a customary and natural reaction.

On October 24, 1951, Mr. Yanko, defendant, and the plaintiff, C. E. Raleigh, representing the union, met in Attorney

Paul Taylor's office, who represented the defendants. There Plaintiff's Exhibit "A" was signed up, the so called "Recognition Agreement."

The defendant, Nick Yanko, signed the agreement for defendants. He claims he signed it involuntarily in order to get the workers back and the work done in his place, so he could open on time. He did not see fit to refuse to sign and test the matter out on the theory that he had no workers or employees in the restaurant business then, as it was not open and in operation as a going business.

However the court finds no coercion or duress or undue influence in the legal sense. As a practical matter Yanko knew that as long as the picketing by the plaintiff union continued, the other A. F. of L. trade workers, carpenters, plumbers and the like, would not stay on the job. He wanted to keep going and to get his business opened. So, knowing presumably what he was doing, he voluntarily signed the agreement.

However the picketing probably was premature, as defendants were not actually in operation, and had no definite contracts of employment with waiters, etc., although the evidence shows that defendants had many employees lined up, so to speak, to commence work.

Many of these workers had been approached by Yanko, or had approached him. Many were employees of the defendants' before the fire and wanted to come back. Some were members of plaintiff union, in good standing, others were still on the union roster but had not kept up their dues and were subject to suspension if the union saw fit. Many were subject to good standing by paying a fine or other arrangement satisfactory to the union.

At the time of the signing of Exhibit "A" a tentative understanding was reached that all fines would be waived and each employee or prospective employee would be approved upon the payment of five dollars.

This court feels certain that had Yanko sought equitable relief at that time, instead of signing the agreement, that a court would in equity have had full legal right to discontinue the picketing until the defendants' business was in full operation, to-wit until November 10, 1951, the day it opened. In this court's opinion, at that time, November 10, 1951, assuming conditions had not changed, there would have been and was a labor dispute between the union and the defendants, even though there was present no dispute between the employers and their employees. And accordingly the union, **under the doctrine of freedom of speech**, adopted by our United States Supreme Court in A. F. of L. v. Swing,

312 U. S. 321, and Meadowmoor Dairies Inc. 312 U. S. 287, and other cases, would have had the legal right to peacefully picket to acquaint the community and those concerned, with said dispute.

The same is true now concerning the present picketing now in progress.

For a further discussion of this law the court will refer to the Iacomini Restaurant case decided by this branch of this court and appearing in Ohio Law Reporter March 14, 1949, and 38 Ohio Opinions, and 85 N. E. Rep. (2nd) 534, 54 Abs 33.

This court was sustained therein by our Ninth District Court of Appeals in its unreported case No. 3964 decided in 1949.

**Discussion of Plaintiff's Exhibit "A" designated Union House or Bar Card Contract** which the parties hereto signed on October 24, 1951, under the circumstances discussed above.

Under the designation above mentioned appears this language: **"This agreement contains the conditions under which the Union House or Bar Cards of the Hotel and Restaurant Employees and Bartenders International Union can be displayed or utilized for any purpose."**

Then follows the name of the plaintiff local union—"Local Union No. 118, Card No. 120055 is hereby issued to The Bubble Bar, Akron, Ohio, on this 24th day of October, 1951, upon the following terms and conditions:"

"FIRST—That the party or parties to whom this card is issued will employ from this date on only members in good standing of the Hotel and Restaurant Employees and Bartenders International Union; when such employees are eligible to membership in said International; and that all employees shall always be and remain in good standing with said International and shall be hired through the office of Local Union No. 118 or the Local Unions affiliated with the Local Joint Executive Board of Akron, Ohio."

"SECOND—That the party or parties to whom said card is issued shall sell Union Labeled Goods whenever possible."

"THIRD—That the party or parties to whom said card is issued shall display the Union House or Bar Card in a conspicuous place and that the card will be used only in The Bubble Bar * * *."

"FOURTH—That the said Union House or Bar Card is now and always remains the property of the Hotel and Restaurant Employees and Bartenders International Union, and that the said * * * Card will be returned * * * on demand of Local Union * * *."

Note there are other provisions in said Exhibit "A" not particularly pertinent having to do further with regulations concerning the shop card.

**There is no evidence before the court that the card was actually issued and turned over to the defendants, although the contract speaks of its issue and designates its number, etc.**

It will be noted that there is no definite time fixed as to defendants' obligation to employ only members in good standing of the union, except from this time on. (See paragraph marked "First" above.)

The question is immediately raised, do the defendants in Exhibit "A" herein agree to recognize the union for the purposes of collective bargaining, and for a union shop, and the like, or is this only the shop card contract which is issued to an employer who has a union shop agreement and has worked out all the details thereof, and the card is evidence to the world that the union has put the union stamp of approval on him and his business?

The card when issued would no doubt carry the provision that the union had sole property rights therein and could remove it at will, as the contract states, or at least where any dispute whatsoever arose.

That this is true see **Foutts v. Barbers Union, 155 Oh St. 573** (**CP 55 Abs 537**), which arose in this court, wherein this branch of the court and the Court of Appeals held that the union card could not be removed, but the Supreme Court held it could be where a dispute arose between the employer and the union, although the employer had all union barbers and no dispute with them at all.

It will be noted in the contract, Exhibit "A" here that the union does not agree to do anything, except it indicates that the union has issued the Union Card, and as stated above, the union is given the absolute right on demand, for no reason at all, to remove the union card and cancel the contract.

The evidence shows by stipulation and otherwise, that at the time of signing Exhibit "A" there was discussion by the parties that after the business opened and the employees were at work, the union and the defendants would get together and discuss such matters as wages, hours and the like, with a view to agreeing upon a working agreement. This proposed working agreement in writing was gone over by those present at Attorney Taylor's office on October 24, 1951, but nothing was arrived at. Since then nothing has been done and the instant case was filed March 15, 1952.

Counsel for the Union claims that under the so called

recognition contract, Exhibit "A," the defendants can be compelled to hire only union labor, that the court shall enjoin defendants from employing or keeping in their employ any non union employees, and that in effect defendants will have to conduct and operate a union shop, and if the employees will not join up, they should be fired and replaced with union employees.

The defendants deny further that the contract is a union recognition contract, and say that whatever it is, it is unenforcible, as the plaintiff union does not agree to do anything, and because plaintiff union can demand and get the "Union House Card" at will, and thus cancel the whole agreement, and that the same is void for want of lack of mutuality. It is also contended that the agreement is unenforcible due to indefiniteness as to duration and termination, and calls for union employment, but is indefinite and uncertain as to hours, wages and the like.

From the case of Polaner, etc. Plaintiff, v. Gold Medal Grill, decided by Judge Reynolds of Franklin County, Common Pleas Court, July 2, 1951 (unreported), which decision plaintiff's counsel cites in full, I quote in part: (underscoring by this court)

"In this action plaintiff is seeking a mandatory injunction to compel the performance of the terms of a contract entered into between the Hotel, Restaurant and Bartenders Union Local 505 A. F. of L. and Frank Kutak, owner of Gold Medal Grill.

"On September 5, 1950, the contract was entered into by the terms of which Kutak agreed among other things, that **for one year beginning on September 4, 1951,** it would hire and retain in its employ only members in good standing in the local union, and that in the event non-union members were employed that they would become members **within fifteen** days from the time of employment.

"There is no question but that the contract was a valid and binding agreement enforcible **against either of the parties thereto."**

The court granted the injunction against the defendant assignee of the original owner compelling performance of the contract to employ union workers.

The court has searched the authorities, as has counsel, for cases where the court has granted specific performance of an employer's contract to employ only union labor, but excepting Judge Reynolds' decision discussed just above, we have found none.

Many cases can be found sustaining the validity of such contracts, but apparently the unions have adopted the policy

of striking to enforce the contract rather than asking specific performance, and it may be that that is the proper and only remedy. Then if the court determines the contract valid, the strike and the right to lawfully picket is sustained.

As an example see Thorn v. Foy, et al, Sup. Ct. Mass. (Jan 31, 1952) 103 N. E. Rep. 2nd 416, Syllabus (5) and discussion on page 417 (subdivision 5). (Feb. 27, 1952 Advance Sheets.)

It will also be noted in the decision in the Ohio case above, the following:

"At the time the contract was entered into, the Gold Medal Grill was opened by Frank Kutak, who in May of this year sold the business to Gold Medal Grill Inc., a corporation, **which corporation proceeded to discharge the union employees and hire non-union ones.**" (Emphasis by this court.)

It is obvious to this court, in the instant case, that the contract involved there, considered by Judge Reynolds, was a contract of definite and certain terms as to duration, wages, hours and the like, mutually binding on all parties. In fact the contract was in operation, the employees were union members, and the new (assignee) owner sought to discharge the union employees and hire non union employees. And it may be too, if all the facts were known, that the corporation that became the assignee was created to avoid the contract obligation.

Exhibit "A," the contract in our instant case provides as follows:

"This agreement contains the conditions under which the Union House or Bar Cards of the Hotel and Restaurant Employees and Bartenders International Union can be displayed or utilized for any purpose."

In other words the parties are agreeing upon and acknowledging the terms and conditions under which the card is issued and under which it can be displayed or used. Naturally if an employer did not employ union labor and conduct a union establishment, he could not have any right to the Union Shop Card or the right to display it, as that would be a false representation to the public.

The so called "recognition contract" is in law and in fact a license to the employer to have issued to him a union shop card, which license is revocable at the will of the union, internationally or locally.

The union does not bind itself to do anything except that it acknowledges the issuance of the union card. There is a total lack of mutuality. If binding upon the employer, it is not binding at all upon the union. It is like a lease which would attempt to bind the landlord but allow the tenant to terminate the lease at will.

The remedy of the union here at the most would be the revocation of the issuance of the union card and cancellation of the same, and defendants would have no right to display it, and the union would be and is entitled to possession thereof on demand.

See **Foutts v. Barbers Union, 155 Oh St 573** cited above.

The contract fails for want of definiteness as to terms of duration and otherwise.

Suppose the court had the power here to order the defendants to negotiate a union contract as to wages, hours and other employment conditions. The question would immediately arise as to what the conditions to be ordered would be, and for how long a period of time, and like questions.

**As to the question** of the necessity of mutuality of remedy as a condition precedent to specific performance see:

**9 O. Jur., Sec. 79, page 309; 37 O. Jur., Sec. 35, page 48; 37 O. Jur., Sec. 50, pages 50 and 52 (par. 39).**

**As to the question** of certainty as to time and other conditions as a condition precedent to specific performance see:

**9 O. Jur., Sec. 110, page 329; 37 O. Jur., Sec. 22, page 30.**

It is not within the authority of this court to order the defendants to sit down with the union and attempt to negotiate even though I believe that if they did, their differences might be settled.

The union on the other hand, in order to accomplish that which the court cannot order under the agreement in question, as a further remedy, can, as stated above, under their constitutional rights of freedom of speech, peacefully picket the defendants' business, providing they proceed lawfully. Counsel on both sides know what I mean in this connection from the court's ruling on the law in the Iacomini case cited above and from the Appellate Court's decision affirming same.

See also **Anderson Sons Co. v. Union, 156 Oh St 541,** (1) Syllabus and first paragraph at top of page 561. (Feb. 18, 1952 Ohio Bar.)

The defendants, through Mr. Yanko, have indicated their feeling not to oppose their employees joining the union if they wish to do so.

The court has suggested to counsel and the parties that they should continue their friendly relationship and discussion with a view of working out their problem if possible.

The court will refuse plaintiff's prayer for injunction, which seeks an order enjoining defendants from employing any non-union help at the restaurant.

A decree will be prepared in accordance with the court's opinion, with exceptions to all parties.